# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VELMON BRASWELL,
  *Plaintiff*,

  v.                                                    No. 3:16-cv-1431 (JAM)

BUJNICKI, *et al.*,
  *Defendants*.

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Velmon Braswell was confined at the Northern Correctional Institution as a pre-trial detainee. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, alleging, in essence, that defendants used excessive force against him while he was detained awaiting trial, thereby violating his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. After an initial review pursuant to 28 U.S.C. § 1915A, I conclude that plaintiff's complaint should go forward against all defendants on his Fourteenth Amendment excessive force claim and equal protection claims, and should be dismissed as to plaintiff's other claims.

### BACKGROUND

Plaintiff names nine defendants: Lieutenants Bujnicki and Porylo and Correctional Officers Jasion, Caron, Kidd, Piscottano, Boudreau, Titus, and McCarthy, all of whom work at Northern Correctional Institution. All defendants are named in their individual capacities only. Doc. #1 at 1; Doc. #14 at 2–3.

The following allegations from plaintiff's complaint are accepted as true only for purposes of the Court's initial review. At all times relevant to this complaint, plaintiff was a pretrial detainee. Doc. #1 at 6 (¶ 14).

In May 2016, plaintiff was transferred to Northern Correctional Institution. *Id.* at ¶ 18. Upon his arrival, the medical department issued plaintiff a medical pass. *Id.* at 14 (¶ 64). Plaintiff was suffering from chronic pain and had been prescribed Tylenol. *Id.* at 7 (¶ 19).

Several weeks after plaintiff was transferred, he was awoken while sleeping in his cell by a correctional officer and told to provide his ID number. Plaintiff put his ID card in the cell window and returned to bed. Defendant McCarthy issued plaintiff a false disciplinary report. *Ibid.* As a result, more correctional officers came to his cell and told plaintiff that he was going to restrictive housing. Plaintiff asked that he be handcuffed with his hands in front. He stated that he had a medical pass because he had medical issues with his hand, arm, and shoulder. Defendant Bujnicki said that plaintiff's medical pass meant nothing. Although defendant McCarthy threatened him, plaintiff was handcuffed in front without issue. *Id.* at 7 (¶¶ 20–21). On the way to restrictive housing, plaintiff and defendant Bujnicki "had some words" after plaintiff asked the officers to watch out for his shoulder because he had medical issues and chronic pain. *Id.* at ¶ 22.

When plaintiff entered the restrictive housing unit and faced the wall, defendant Caron twisted plaintiff's left arm. Plaintiff said that defendant Caron was hurting him and asked defendant Caron to stop. Defendant Caron would not listen. Defendant Titus then pulled plaintiff's underwear. *Id.* at 8 (¶ 24). Defendant Bujnicki stated that plaintiff was not being compliant and ordered defendants Caron, Jasion, Titus, and others to perform a hands-on strip search. *Id.* at ¶ 25.

Defendant Titus hurt plaintiff by pulling off his knee braces. Plaintiff made his displeasure known and informed defendants that he had problems with his shoulder, hand, arm,

2

back, hip, and knee. *Id.* at ¶¶ 25–26. Defendants Caron, Jasion, Titus, and other unnamed correctional staff stripped off plaintiff's clothes as well as his knee, hip, and back braces, causing him severe pain in the process. *Id.* at ¶ 27. Plaintiff was held up by his arms and shoulders while defendants Caron and Jasion twisted plaintiff's left side. *Id.* at ¶ 28.

Plaintiff told defendants that his back, hip, and knee issues prevented him from bending over without holding the wall for support. Defendant Bujnicki and others forced him to bend over without support. *Id.* at 8–9 (¶¶ 29–30). Defendants' actions caused injuries to plaintiff's left hand, arm, and shoulder as well as to his left knee and hip and his back. *Id.* at 9 (¶ 32).

A few days after this first incident, plaintiff again showed staff his medical card when they were attempting to handcuff him.[1] *Id.* at 11 (¶¶ 43–44). He was told that the card was no good at Northern Correctional Institution. *Ibid.* Defendant Kidd took the medical card and, at plaintiff's request, called a supervisor. Defendant Porylo, a Lieutenant, came to the shower area where plaintiff was at the time, and plaintiff requested to be handcuffed with his hands in front of his body due to his medical needs. *Id.* at ¶¶ 45–46. Defendant Porylo ignored plaintiff's medical pass and ordered plaintiff handcuffed with his hands behind his back. Plaintiff complied but experienced severe pain. *Id.* at ¶ 47.

Plaintiff was taken into a cell and pushed up against the wall. *Id.* at 12 (¶ 49). With two unidentified correctional officers holding plaintiff's arms, defendant Jasion removed the handcuffs and pulled plaintiff's underwear down to his ankles. *Id.* at ¶¶ 50–51. Then defendant Jasion pulled plaintiff's underwear "very hard in a upw[ar]d motion hurting plaintiff testicles."

---

[1] In between the two incidents, defendant Bujnicki came to plaintiff's cell and called him a "snitch" within the hearing of other inmates, which plaintiff alleges put him in danger. *Id.* at 10 (¶ 39).

*Id.* at ¶ 52. Defendant Jasion also forced plaintiff to bend over again. *Id.* at 13 (¶ 55).

Defendant Porylo then ordered plaintiff handcuffed in front and ordered defendants Jasion, Kidd, and Piscottano to put plaintiff on the bed in the cell. *Id.* at ¶ 56. Plaintiff was slammed and pushed onto the bed, causing him severe pain. Although he complained about pain, defendants did not stop. *Id.* at ¶¶ 57–58. Defendant Porylo ordered the other defendants to hold plaintiff down so other defendants, including defendant Boudreau, could jump on him. *Id.* at ¶ 58. Defendant Piscottano kneed plaintiff in his testicles. Defendant Porylo refused plaintiff's requests to call the police. *Id.* at 13–14 (¶¶ 59–60). Defendant Kidd continued to hold down plaintiff's left shoulder, causing plaintiff pain and difficulty breathing. *Ibid*.

This abuse by defendants left plaintiff unable to stand. *Id.* at 14 (¶ 61). He was taken to the medical unit in a wheelchair, where he was placed on a medical watch due to the injuries. *Id.* at ¶¶ 62–63.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). Nevertheless, it is well-established that "pro se complaints must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013).

4

***Excessive Force***

Plaintiff asserts that defendants used excessive force on him in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments. Doc. #1 at 10 (¶ 41), 15–16 (¶ 71). Because plaintiff was a pretrial detainee in state custody during the events he describes, his claim alleging a constitutional use of excessive force is subject to review under the Fourteenth Amendment's due process clause, rather than separately under the Fourth, Fifth, or Eighth Amendments. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989); *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009); *Brown v. Doe*, 2 F.3d 1236, 1242 n. 1 (2d Cir. 1993).

The Fourteenth Amendment's due process clause "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). A plaintiff may prevail by showing that actions taken against him "are not rationally related to a legitimate nonpunitive governmental purpose," or "appear excessive in relation to that purpose." *Ibid.*

Plaintiff's allegations, taken as true, support his excessive force claim against defendants. Defendants' repeated malicious acts, including jumping on plaintiff and kneeing him in the testicles, served no legitimate purpose. As for cuffing plaintiff's hands behind his back rather than in front, even if defendants could point to a legitimate governmental purpose, plaintiff's medical needs make it plausible that defendants' actions were "excessive in relation to that purpose." *Ibid.* And plaintiff has alleged facts connecting each named defendant to the use of excessive force. *See* Doc. #1 at 8 (defendants Caron, Jasion, Titus, McCarthy, and Bujnicki); *id.*

5

at 13–14 (defendants Kidd, Piscottano, Porylo, and Boudreau).[2] Plaintiff's excessive force claim may therefore proceed against all defendants.

In addition, plaintiff has alleged that defendants Bujnicki and Porylo ordered their subordinates to use excessive force against plaintiff. *See id.* at 7 (¶¶ 22-25), 12 (¶ 58). These allegations, which indicate defendant Bujnicki and Porylo's personal involvement in the use of excessive or disproportionate force, suffice for plaintiff's supervisory liability claims against them to proceed. *See Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013).

### *Equal Protection*

In light of plaintiff's allegations of discrimination, I will interpret the complaint to raise an additional claim of a violation of the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. That provision "bars the government from selective adverse treatment of individuals compared to other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005). Plaintiff here has alleged malicious and bad faith intent to mistreat and injure him. Accordingly, I will permit plaintiff's Equal Protection claim to proceed.

---

[2] Plaintiff has not alleged a specific action by defendant McCarthy that would qualify as the use of excessive force. However, plaintiff alleges that he was assaulted by a number of unspecified defendants at a point when defendant McCarthy appears to have been present. *See* Doc. #1 at 7–8. "Draw[ing] all inferences in the plaintiff's favor," as I must, *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003), I read the complaint to suggest that defendant McCarthy may have been one of the unknown defendants subjecting plaintiff to excessive force, and hold that defendant McCarthy is therefore properly included as a defendant in this action.

### *First Amendment Retaliation*

Plaintiff alleges that his rights to speak and file grievances without threats or retaliation were violated. Doc. #1 at 15–16 (¶ 71). In order to state a First Amendment free-speech retaliation claim, plaintiff must demonstrate that he was engaged in constitutionally protected speech activity, that the defendant took adverse action against him, and that there was a causal connection between the protected activity and the adverse action. *See Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). Filing grievances or lawsuits against correctional staff is protected activity. *Id.* at 352–53. And the malicious attacks plaintiff alleges certainly would qualify as adverse action. But plaintiff alleges no facts connecting these attacks to any lawsuit or grievance filed by him. Plaintiff mentions filing grievances regarding the defendants' conduct, but these grievances, naturally, were filed after the conduct he complains of—and so cannot have been a motivation for the conduct to begin with. Doc. #1 at 5 (¶¶ 10–11). Plaintiff mentions that he filed a civil complaint in state court and was transferred to the Northern Correctional Institution as a result. *Id.* at 6 (¶ 18). But he does not allege facts suggesting that this civil complaint led defendants to mistreat him. Plaintiff alleges only that the Department of Correction has a history of retaliation against prisoners who file complaints. *Id.* at 18 (¶ 80). But without connecting the specific acts against him with specific complaints he filed prior to those acts, he cannot prove retaliation in his own case. Plaintiff's First Amendment retaliation claim is therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1)     Plaintiff's Fourteenth Amendment due process (excessive force) claim and equal protection claim may proceed. Plaintiff's First Amendment retaliation claim is dismissed without prejudice to plaintiff filing an amended complaint within 30 days if he is able to allege facts to sustain plausible grounds for relief. Plaintiff's remaining claims under the Fourth, Fifth, and Eighth Amendment are dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

(2)     **The Clerk shall** verify the current work addresses of the defendants with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     **The Clerk shall** send written notice to plaintiff of the status of this action, along with a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

8

completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10)    Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.

It is so ordered.

Dated at New Haven this 27th day of December 2016.

/s/*Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge